The Honorable Richard A. Jones

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

SHANE STEPHEN ANELLO,

Defendant.

NO.  2:12-cr-00131-RAJ

ORDER ON DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE

## I. BACKGROUND

This matter comes before the Court on Defendant Shane Stephen Anello's motion for compassionate release.  Dkt. 52.  Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **GRANTS** the motion for the reasons explained herein.

Mr. Anello is serving his current sentence after pleading guilty to one count of Unlawful Possession of a Destructive Device and one count of Unlawful Possession of a Stolen Firearm, stemming from two separate incidents occurring in 2012.  Dkt. 29.

In early 2012, Mr. Anello was barred from a Seattle homeless community in which he was residing after he committed various infractions of the community rules.  On April 1, 2012, Mr. Anello returned to the homeless community with a "Molotov

ORDER - 1

cocktail," a soda bottle filled with gasoline with a wick extending from the bottle.  He lit the wick and threw the bottle at a vehicle belonging to the chief arbitrator of the community.  The vehicle caught fire and was damaged.

Two days later, on April 3, 2012, Mr. Anello was driving and pulled alongside a vehicle containing three occupants. While waiting at a red light, he began staring at the occupants of the vehicle. When the light turned green, Mr. Anello began following the other vehicle, even though he did not know any of the occupants of the other car.  He turned off his headlights and followed the vehicle at a high rate of speed, at times trying to bump into the other vehicle.  At some point during the chase, Mr. Anello fired a gun. One of the passengers called 911.

When police located Mr. Anello, he was driving with his headlights off.  Upon noticing the police car, he turned and drove the wrong way down the road before finally stopping in a parking lot.  Upon approaching Mr. Anello's vehicle, an officer observed a .38 caliber revolver on the floor of the passenger side of the vehicle.  Later investigation established the firearm had been previously reported stolen.  PSR ¶ 7-9.

On March 29, 2013, this Court sentenced Mr. Anello to a 132-month term of imprisonment, with three years of supervised release to follow.  Dkt. 41.

Mr. Anello is currently housed at the United States Penitentiary at Beaumont, Texas, with a projected release date of December 31, 2021.

On May 11, 2020, Mr. Anello filed a *pro se* motion for compassionate release. Dkt. 43.  On June 18, 2020, after appointment of counsel, Mr. Anello filed a substitute motion requesting the Court reduce his custodial sentence to time served, with his originally ordered three-year term of supervision to begin immediately.  Dkt. 52.

Mr. Anello requests this Court grant his motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his vulnerability to coronavirus 19 (COVID-19).  Mr. Anello is a 44-year-old African American man.  While relatively young, he argues his serious medical conditions, including uncontrolled hypertension, obesity, and mental illness,

together with his race, elevate his risk for severe complications should he contract COVID-19. He asserts the nature of his confinement at USP Beaumont prevents him from practicing the social distancing necessary to keep him safe from contracting the virus. Finally, he contends he is not a danger to others and can be adequately supervised in the community. Dkt. 52, 54.

The government argues that because Mr. Anello has not presented extraordinary and compelling reasons for a reduction in sentence, and because he continues to present a danger to the community, his motion for compassionate release should be denied. The government acknowledges that while Mr. Anello suffers from certain health conditions that may present complications should he contract COVID-19, he is housed at a Bureau of Prisons (BOP) institution that currently does not have any reported cases of the virus among its inmates. The government maintains Mr. Anello has failed to provide evidence that the BOP's actions to limit and control the spread of the virus have been ineffective, nor that the BOP would be unable to provide sufficient medical treatment in the event Mr. Anello contracts the virus. The government contends that given Mr. Anello's lengthy and violent criminal history, he would be a danger to others if released, and could not be adequately supervised to mitigate the risk to the community. Dkt. 58.

## II. DISCUSSION

### A.    Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13. The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2)

"the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1. The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take. USSC § 1B1.13 cmt. n.4.

Mr. Anello's motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release." As relevant to Mr. Anello's motion, the statute now provides:

> (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted

administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

**B.    Exhaustion of Administrative Remedies**

It is undisputed that Mr. Anello has met the exhaustion requirement and that his request to this Court is timely.  Attached to Mr. Anello's original *pro se* motion is a copy of the request he sent to the warden of USP Beaumont requesting compassionate release. Dkt. 43-2 at 1.  Mr. Anello's BOP medical records reflect that on May 6, 2020, BOP Health Services denied his request for compassionate release, stating he is not "terminally ill or [ ] elderly with a medical condition."  Dkt. 54 at 522.

As the statutorily required 30-day period has expired with no action by the warden of his facility, Mr. Anello's motion is properly before the Court.

**C.    Extraordinary and Compelling Circumstances**

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Anello's term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994.  That statute provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

ORDER  - 5

Consistent with this statute, the applicable policy statement can be found at Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and
>
> (3) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (4) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence. Specifically, Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.n.1.

Mr. Anello argues he has met his burden of showing extraordinary and compelling circumstances exist for the Court to grant his motion for compassionate release.  He has provided evidence he suffers from a variety of medical conditions, specifically hypertension and obesity.  In a declaration dated June 9, 2020, Dr. Lawrence Ho, Clinical Assistant Professor at the Center for Interstitial Lung Diseases, Division of Pulmonary, Critical Care & Sleep Medicine Medical Director, Medical Specialties Clinic at the University of Washington, states as follows:

> "Based on my review of Mr. Anello's medical records, he suffers from serious comorbidities, including hypertension and morbid obesity. Pursuant to the guidelines from the Centers for Disease Control and Prevention and the self-care precautions necessary for people at higher risk . . . as well as my professional expertise, Mr. Anello's serious comorbidities place him in a high-risk category for severe illness from COVID -19 in an institutional setting."

Dkt. 52-1.

Additionally, Mr. Anello's 2012 Presentence Report affirms the history of his condition where it notes, he "suffers from high blood pressure and has seen the physician at the FDC.  He has been prescribed Lisinopril and Hydrochlorothiazide, but to date this treatment has been unsuccessful in lowering his blood pressure to acceptable levels." PSR, ¶ 108.

His high blood pressure is further documented in his more recent BOP medical records, which include multiple relatively recent emergency room visits related to his hypertension, a diagnosis he suffered a transient cerebral ischemic attack (a "mini-stroke"), as well as his current medications which include Aspirin, Carvedilol, Cholecalciferol, Clonidine, Furosemide, Hydralazine, Lactulose Solution, Levothyroxine, Losartan Potassium, Nifedipine, and Spironolactone.  Dkt. 54.

While acknowledging the BOP medical records document Mr. Anello's diagnosis of hypertension, the government highlights that Mr. Anello often fails to follow expert advice and direction, and provides records showing instances where he has failed to take the medication prescribed to treat his condition.  Dkt. 58.  Mr. Anello contends that his failure to follow medication recommendations was due to their side effects and inefficacy.  Dkt. 63.

Mr. Anello's medical records confirm he has not always followed the prescribed medication recommendations.  However, his medical records confirm exacerbated medical conditions that far exceed Mr. Anello's indication that he is not taking his

ORDER  - 7

medicine on time or periodically.  This alone cannot serve as a barrier to his application for compassionate release.

In addition, the government agrees with Mr. Anello that hypertension is a risk factor identified by the CDC as one that might heighten the risk of complications should he be exposed to and contract COVID-19.  The government also concurs this is something the Court should consider in assessing whether Mr. Anello has set forth an extraordinary and compelling reason for a reduction in sentence.  Dkt. 58.

Mr. Anello further indicates he is suffering from mental illness, which renders him especially vulnerable to the effects of the COVID-19 pandemic.  He points to the Presentence Report prepared in 2012, indicating the probation officer's impression that he suffered from some significant, though undetermined, mental health problems.  PSR ¶ 110.  The probation officer noted a history of at least two suicide attempts.  PSR ¶¶ 109; 113–14.  At the time of sentencing, Mr. Anello was evaluated by a forensic psychologist who diagnosed Mr. Anello with a form of psychosis exacerbated by substance abuse.  Dkt. 38.

Mr. Anello presents the Declarations of Drs. Paul Good and Terry Kupers, both experts on correctional mental health issues, as evidence that the COVID-19 pandemic and the BOP's efforts to contain the virus "disproportionately impact and harm the mentally ill."  Dkt. 52-2.  More specifically, both doctors point out that "mental illness weakens the immune system, making it easier for viruses like COVID-19 to infect the mentally ill."  Dkt. 52, Ex. 2, ¶ 16. This mental health condition, combined with his other medical conditions, further supports the conclusion that Mr. Anello is eligible for the relief he seeks.

Next, the government concedes that Mr. Anello is obese, but contends his height and weight as recorded in the medical records do not present a body mass index to rise to the level that the CDC has identified as a risk factor for COVID-19.  This argument flies in the face of data from the CDC's recently revised guidelines that state that "[h]aving obesity [at any age], defined as a body mass index [BMI] of 30 or above, increases your

risk of severe illness from COVID-19." Dkt. 63, p. 2. Mr. Anello's medical records confirm that he has a BMI of 35.0 to 35.9.

The government also contends that Mr. Anello is only 44 years old and well outside of any age-related risk group. Once again, the government ignores recent data on age and COVID-19 risk. The CDC data published on June 19, 2020 shows that almost 70% of COVID-19 cases in the United States are individuals under the age of 60, with a median age of 48. (Males between the ages of 40 and 49 constitute 17 percent of cases.) https://www.cdc.gov/mmwt/volumes/69/wr/mm6924e2htm#T1_down. The median age is even lower in states experiencing surges, which includes the state of Texas where the media is in a blur with reports of hospital capacity from COVID-19 infections.[1]

The next basis posited by Mr. Anello is the COVID-19 impact upon him because of his race. The government argues that it is undisputed that African Americans and other minorities have suffered disproportionately during this crisis, but the CDC suggests that the disproportionate rate of severe outcome is due to complex societal realities related to living and work conditions, unequal access to health care, and underlying health conditions. The government further contends that the fact that Mr. Anello is African American does not elevate his risk of suffering from complications, especially in light of the fact that he has been removed from the community and is under the care of the BOP. Dkt. 58. While this may be true, these circumstances, combined with Mr. Anello's other medical conditions, certainly give this Court ample reason to factor in the disproportionate effect upon African Americans and the societal observations noted by the CDC in analyzing Mr. Anello's compassionate release request.

Mr. Anello also presents argument that the BOP's response to the COVID-19 pandemic has been inadequate. The government asserts Mr. Anello has not made a

---

[1] *Hospitals in Florida, Texas and Arizona Are Almost at Capacity as Coronavirus Cases Surge."* Time (July 6, 2020); *Hospitals across Texas prepare to hit capacity amid surge in coronavirus cases.* CBS News (July 7, 2020); and *Record number of COVID-19 patients hospitalized in Texas Friday."* Houston Chronicle (July 10, 2020).

1   showing that USP Beaumont is unable to provide appropriate medical treatment should

2   he become infected.  The government indicates that USP Beaumont, as of June 25, 2020,

3   has reported no cases of COVID-19 among the inmates, although two staff members have

4   tested positive for the disease, arguing this demonstrates the effectiveness of the actions

5   taken by BOP to limit and control the spread of the disease.  Dkt. 58.

6       The Court appreciates the government's argument that there have been no

7   confirmed cases of COVID-19 at USP Beaumont.  But, as previously stated in *United*

8   *States v. Locke*, 2020 WL 3101016, June 11, 2020, this representation is made absent

9   evidence of any mass testing or confirmation of the number of inmates tested.

10  Consequently, this Court does not have the benefit of an accurate accounting of the

11  presence or absence of the disease at the institution.  No confirmed case of COVID-19 of

12  those tested may be the conclusion, but with the absence of any data or record of testing

13  being accomplished, this Court is suspect of the accuracy of true COVID-19

14  circumstances at the facility housing Mr. Anello.

15      When an inmate has health conditions that make them significantly more

16  vulnerable to COVID-19, that may constitute an extraordinary and compelling

17  circumstance.  *See e.g., United States v. Cosgrove,* Case No. CR15-0230-RSM, -F. Supp.

18  3rd-, 2020 WL 1875509 (W.D. Wash. April 15, 2020; *United States v. Dorsey,* Case No.

19  CR16-0138-BLW-JCC, 2020WL 2562878 (W.D. Wash. May 19, 2020).

20      While some courts have held, as argued by the government, that the Sentencing

21  Commission's policy statement on compassionate release remains controlling in the wake

22  of the First Step Act, this Court agrees with the position taken by numerous courts that

23  the "old policy statement provides helpful guidance, [but]…does not constrain [a court's]

24  independent assessment of whether 'extraordinary and compelling reasons' warrant a

25  sentence reduction under § 3852(c)(1)(A)."  *United States v. Cosgrove, Id.; United States*

26  *v. Rodriguez*, 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,*

27  2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043

28

(RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No. 2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

The tenor of the government's objection is that Mr. Anello's medical conditions do not warrant compassionate release nor do his general concerns about possible exposure to COVID-19 meet the criteria for extraordinary and compelling reasons for a reduction in sentence as set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13. *United States v. Eberhart,* No. 13-cr-00313, 2020 WL 1450745 (N.D. Cal. Mar. 25, 2020. While general fears do not warrant a sentence reduction, this Court has the authority to make an independent assessment of the facts and circumstances presented by Mr. Anello. Based upon the totality of circumstances and the constellation and aggravated circumstance of his health considering the COVID-19 epidemic, he has presented sufficient facts and circumstances for this Court to conclude that he meets the criteria for compassionate release.

**D. Safety of Others**

The government contends that if Mr. Anello has presented extraordinary and compelling reasons to support consideration of a reduction in sentence, the Court must still consider whether a reduction in sentence is appropriate in light of the factors in 18 U.S.C. § 3553(a) and the danger that Mr. Anello might continue to present to another person or the community. Dkt. 58. *See* U.S.S.G. §1B1.13(2).

In making this determination, the Court looks to the nature and circumstances of the underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community. 18 U.S.C. §3142(g).

Mr. Anello's criminal conduct in this matter was serious and supported by substantial evidence as contained in the Plea Agreement. Dkt. 29. Mr. Anello asserts he would not pose a danger to the community if released immediately, and that he can be safely supervised in the community. While acknowledging his criminal conduct in this

matter was serious, and that he has an extensive criminal history, he asserts his history consists overwhelmingly of misdemeanor offenses or low-level felonies and were largely driven by untreated mental illness exacerbated by substance abuse.  He indicates his disciplinary record while incarcerated reflects he has had no recent infractions, and that his last infractions were committed three years ago and did not involve violence.  Mr. Anello indicates the fact his current convictions involved violence does not disqualify him from the relief he seeks.  Mr. Anello argues his risk of recidivism can be mitigated by the conditions that will be imposed upon him under his three-year term of supervision. Dkt. 52.

The government responds that the evidence before the Court precludes a finding Mr. Anello is no longer a danger to the community and disagrees that any risk may be mitigated through supervision.  The government highlights Mr. Anello's extensive and serious criminal history, many of which are felony assault convictions which average approximately 21 years ago when they occurred, the most recent in 2007, and multiple drug trafficking and weapons offenses.  PSR ¶ 50-68.  The government contends Mr. Anello has demonstrated that he presents a risk to the community if released, that nothing about the COVID-19 pandemic reduces his danger to others and to the community, and that he poses a high risk of reoffending if he were to be released.  Dkt. 58.

The Court disagrees with the government's analysis and finds that the record and proposal submitted by Mr. Anello outweigh its generalized danger concerns with releasing Mr. Anello.  The Court's conclusion is not intended to minimize the facts and danger of Mr. Anello's conduct that served as the basis for his underlying conviction.  It was dangerous, and it was violent.  Mr. Anello was sentenced accordingly but his conviction alone should not serve as a barrier to the changed circumstances presented by COVID-19.

///

///

///

ORDER  - 12

### E.  Other 18 U.S.C. § 3553(a) Factors

In determining whether to grant Mr. Anello's compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court must consider relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a).  These factors include the need for the sentence imposed, the kinds of sentences available, promoting respect for the law, providing just punishment for the offense, avoiding unwarranted sentencing disparities, and providing medical care in the most efficient manner.  18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C. § 3582(c)(1)(A).

Mr. Anello posits that when this Court imposed its 132-month sentence, the Court didn't contemplate the present conditions of Mr. Anello's confinement, where he faces a significant risk of exposure to a disease that could either seriously harm him or even kill him.  He argues his profound change of circumstances warrants reconsideration of the imposed sentence.  Dkt. 52.  The Court agrees.  His continued incarceration in light of his medical condition puts him in a high-risk category for severe illness from COVID-19 in an institutional setting.

Mr. Anello has served approximately 85% of his sentence.  If pre-release time is considered, he has less than a year before being released into the community.  Dkt. 63.  With the additional conditions of supervision to be imposed by this Court, the Court is satisfied that this outcome will promote respect for the law, provide just punishment for the underlying offense, and avoid his unwarranted high risk of infection from the virus.

### F.  Consistency with Policy Statement

Last, the Court must determine whether Mr. Anello's compassionate release would be consistent with the relevant policy statement.  *See* U.S.S.G. § 1B1.13(3).  The policy requires the Court to make certain findings before granting an inmate's request for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Court has done so with the detail contained in this order.

*///*

ORDER  - 13

### G.  Additional Term of Supervised Release

18 U.S.C. § 3582(c)(1)(A) authorizes a reduction in sentence.  It also permits the Court to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment."

The Court finds that an additional term of supervised release is unnecessary or warranted.  However, the Court finds that as an additional condition of the supervised release previously imposed, Mr. Anello shall serve the first twelve months of his three-year term of supervised release on home confinement, with the same standard and any special conditions of the original term of supervised release.

### III.  CONCLUSION

For the foregoing reasons, Defendant Shane Stephen Anello's motion for compassionate release is **GRANTED**.  The Court hereby **ORDERS** that Mr. Anello's term of imprisonment be reduced to time served.  The Court **ORDERS** the Bureau of Prisons to release Mr. Anello no later than 72 hours after entry of this order for placement according to the release plan approved by the United States Probation Office where he will be supervised.  The Court further **ORDERS** that in the interest of protecting the community, Mr. Anello shall remain in quarantine for fourteen days to ensure that he has not contracted the virus, especially since he will be traveling from a state where COVID-19 is surging.  Mr. Anello is **ORDERED** to contact the United States Probation Office within 24 hours of his release and follow its instructions.

///

///

///

///

///

ORDER  - 14

The Court further **ORDERS** that as an additional condition of supervised release, Mr. Anello shall serve the first twelve months of his three-year term of supervised release in home confinement subject to the standard and special conditions of the original term of supervised release.

DATED this 14th day of July, 2020.

The Honorable Richard A. Jones
United States District Judge